USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-8-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ISMAEL SOW,

                         Petitioner,

              - against -

MATTHEW G. WHITAKER, in his official
capacity as the Acting Attorney General of the
United States, et al.,

                         Respondents.

----------------------------------------------------------------X

18-cv-11394 (GBD) (RWL)

**OPINION AND ORDER**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

      This matter is before the Court on the United States' renewed motion to transfer this action to the District of New Jersey. Petitioner Ismael Sow ("Mr. Sow") filed a response and requested that this Court hold a hearing on the transfer motion and on Mr. Sow's request for an order immediately releasing him from confinement. On May 2, 2019, the Court held a hearing addressing those issues. For the reasons that follow, I find that Mr. Sow's "core" claims – i.e., statutory and constitutional challenges to his wrongful detention – are not properly before this Court.

### Factual and Procedural Background[1]

      Mr. Sow is a 58-year-old Guinean national who has lived in the United States for 15 years. (*See* Pet. ¶ 43-48.) Mr. Sow fled Guinea in 2004 after being imprisoned and tortured for his political beliefs. (Pet. ¶ 43-47.) Once in New York, Mr. Sow received

---

[1] Unless indicated otherwise, the facts are derived from Mr. Sow's Second Amended Petition ("Pet.").

permission to remain until November 12, 2004.  (Pet. ¶ 47, Ex. 5.)  During that time, Mr. Sow applied for asylum.  (Pet. ¶¶ 48-55.)

Mr. Sow stayed beyond the November deadline and was served on April 13, 2005 with a Notice to Appear, a document by which the agency of Immigration Customers and Enforcement ("ICE") initiates removal proceedings.[2]  On February 25, 2008, an immigration judge entered an order granting Mr. Sow the opportunity for voluntary departure.  (Pet. ¶ 52, Ex. 8.)  The order gave Mr. Sow until June 25, 2008, to depart the United States on his own accord.  (Pet. Ex. 8.)  Once again, however, Mr. Sow overstayed his permitted time to remain and subsequently became subject to a final order of removal.  (*See* Pet. Ex. 8.)

In 2012, ICE raided Mr. Sow's home, which led to his arrest.  (Pet. ¶ 55.)  Mr. Sow was detained for 90 days and then released on an order of supervision, with which he fully complied for the following six years.  (Pet. ¶ 55.)  In September 2018, Mr. Sow filed a motion to reopen his immigration proceedings on the basis of ineffective assistance of counsel.  (Pet. ¶ 56.)  An immigration judge denied Mr. Sow's motion to reopen on November 28, 2018.  (Pet. ¶ 57.)

Two days later, on November 30, 2018, ICE officers again arrested Mr. Sow at his home.  (Pet. ¶ 57.)  ICE first brought Mr. Sow to the New York ICE headquarters at 26 Federal Plaza in Manhattan.  There, Mr. Sow was served with a Notice of Revocation of Release stating that Mr. Sow's removal was imminent and that he was to remain in

---

[2] *See* Ex. A, attached to Respondents' Memorandum in Support of Motion to Transfer dated March 22, 2019.

custody of ICE.  (Pet. ¶ 58.)  Later that same day or evening, ICE moved Mr. Sow to the Bergen County jail in New Jersey.[3]

On December 4, 2018, ICE transported Mr. Sow back to 26 Federal Plaza, where he spent most of the day.[4]  Later that same day, however, Mr. Sow's attorney learned from Mr. Sow's family that he had been transferred from Bergen County jail.  (Bogaciu Aff. ¶ 4.)  Mr. Sow's attorney attempted to contact Mr. Sow's deportation officer, calling multiple times and eventually leaving a voicemail.  (Bogaciu Aff. ¶ 7.)  Mr. Sow's attorney then reached out to Deportation Officer Sayed, a different officer for whom she had contact information.  (Bogaciu Aff. ¶¶ 5-8.)  Officer Sayed stated that Mr. Sow was currently in the New York Field Office pending deportation.  (Bogaciu Aff. ¶ 8.)  Neither Officer Sayed, nor anyone else from ICE, informed Mr. Sow's attorney that Mr. Sow would be transported by plane later that day to Louisiana.  (See Pet. ¶ 61-62; Bogaciu Aff. ¶ 8.)

Based on the discussion with Officer Sayed, Mr. Sow's attorneys filed an order to show cause and a petition for habeas corpus in the Southern District of New York on December 5, 2018 – after ICE had transferred Mr. Sow to Louisiana.[5]  (Dkt. 1.)  Mr. Sow's petition asserted two types of claims: those considered "core" claims concerning his habeas claims and wrongful detention, and "non-core" claims addressing his removal proceedings.  The emergency Part I judge issued a temporary restraining order that

---

[3] Second Declaration of Ismael Sow ("Second Sow Decl."), attached as Ex. 1 to Response in Opposition to the Motion to Transfer dated April 12, 2019, ¶¶ 1-2.

[4] See Affirmation of Cornia Bogaciu, Esq. ("Bogaciu Aff."), attached as Ex. 3 to Second Amended Petition dated March 6, 2019, ¶ 4; Second Sow Decl. ¶ 3.

[5] December 5, 2018 was a federal holiday, a national day of mourning due to the passing of President George H. W. Bush.  As a result, Mr. Sow's petition was not entered on the Court's docket until December 6, 2018.

enjoined ICE from removing Mr. Sow to Guinea or transferring him from the jurisdiction of the New York ICE Field Office.  (*See* Dkt. 3 ¶¶ 4-5.)  ICE officers received a copy of the temporary restraining order on the same day, December 5.[6]  On December 7, 2018, ICE transferred Mr. Sow from Oakdale, Louisiana, to El Paso, Texas, the eventual departure point for Mr. Sow's removal.  (*See* Bacchus Decl. ¶¶ 4, 6.)  Given the temporary restraining order, however, ICE did not proceed with removing Mr. Sow.  (Bacchus Decl. ¶ 6.)  Instead, ICE transported Mr. Sow back to New Jersey.  Mr. Sow remains in ICE detention in the Essex County Correctional Facility in New Jersey.  (*See* Pet. ¶¶ 1, 65, 83.)

On December 10, 2018, the Government moved to dismiss or transfer Mr. Sow's case based on the fact that – at that time Mr. Sow filed his petition – he was not physically present in New York but instead was in the Western District of Louisiana.  (Dkt. 5.)  Rather than oppose that motion, Mr. Sow amended his petition and voluntarily withdrew the core claims relating to his current confinement, thus leaving only his non-core claims.  (*See* Dkt. 12.)

Later, Mr. Sow obtained new counsel who received leave from the Court to file a second amended petition.  (Dkt. 22.)  The Second Amended Petition reinstates Mr. Sow's core claims and alleges five causes of action.  The first three claims are non-core statutory and constitutional challenges to ICE's legal authority to remove Mr. Sow while he is pursuing his motion to reopen.  (Pet. ¶ 87-105.)  The other two causes of action are core statutory and constitutional challenges to Mr. Sow's detention.  (Pet. ¶ 106-30.)  The

---

[6] Declaration of Deportation Officer Naquan Bacchus ("Bacchus Decl.") dated March 22, 2019, ¶ 5.

Second Amended Petition generally alleges that venue and jurisdiction are proper in the Southern District of New York because (i) the predominant claims are non-core claims, and therefore the New York Field Office Director Thomas Decker, "among others," purportedly is a proper respondent; (ii) the "immediate custodian" rule – which requires core claims to be filed in the district where the petitioner is currently confined – does not apply; and (iii) traditional rules of venue and personal jurisdiction should apply.  (Pet. ¶¶ 20-42.)  The Petition admits that Mr. Sow was not present within this District on the date he filed his petition.  (Pet. ¶ 32.)

On March 22, 2019, the Government moved to renew its motion to dismiss the Petition or in the alternative transfer the case.  (Dkt. 37.)  After the motion was fully briefed, Mr. Sow's counsel moved for a conference to discuss the motion and to seek immediate release of Mr. Sow, pursuant to the Court's inherent power recognized in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001).  On May 2, 2019, the Court heard argument from Mr. Sow's counsel and the Government.  Mr. Sow attended the hearing telephonically.

### The "Immediate Custodian" Rule

"In *Rumsfeld v. Padilla*, the United States Supreme Court explained that under the 'immediate custodian rule,' when a habeas petitioner raises 'core challenges' to his 'present physical confinement,' the 'default rule is that the proper respondent is the warden of the facility where the petitioner is being held, not the Attorney General or some other remote supervisory official.'" *Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473, 474 (S.D.N.Y. 2018) (J., Daniels) (quoting *Padilla*, 542 U.S. 426, 435 (2004)).  By contrast, "a habeas petitioner who challenges a form of 'custody' other than present physical

confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody.'" *Id.* (quoting *Padilla* at 542 U.S. at 438).

In reviewing core claims, "jurisdiction lies in only one district: the district of confinement." *Padilla,* 542 U.S. at 443, 434 ("The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over the petitioner'") (quoting 28 U.S.C. § 2242); *see also* 28 U.S.C. § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained"). This so-called "immediate custodian" rule for core habeas petitions "serves the important purpose of preventing forum shopping by habeas petitioners." *Id.* at 447.

## Discussion

Mr. Sow contends that this case is properly brought in this District, arguing that *Padilla* does not apply to immigration cases. Mr. Sow further asserts that, even if *Padilla* does apply in the immigration context, general rules of venue should apply where a petition contains predominantly non-core claims, even if it also contains core claims. Mr. Sow also argues that *Padilla* contemplates an exception for the immediate-custodian rule in situations where, as here according to Mr. Sow, ICE fails to update petitioner's counsel on the petitioner's physical location. The weight of authority counsels otherwise – the core claims in this case are not properly before this Court.

## I.    *Padilla* Applies to This Case and Requires Transfer of Mr. Sow's Core Claims

Mr. Sow argues that *Padilla* does not apply because the Supreme Court "expressly declined to extend the rule to the immigration context."[7]    Mr. Sow's argument mischaracterizes *Padilla* and is inconsistent with the dominant case law in this District.

---

[7] Petitioner's Opposition to the Motion to Transfer ("Pet. Opp.") at 6.

In *Padilla* the Supreme Court acknowledged that it had "left open the question whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." *Padilla*, 542 U.S. at 435 n.8.  Because the issue was not before the Court, it "decline[d] to resolve it."  *Id*.  As aptly stated by Judge Failla of this District, "footnote 8 of the *Padilla* opinion . . . does not mean that the Court suggested that it would apply a different line of reasoning in the immigration context.  Instead the Court merely declined to address the question because the issue was not before it."[8]

Indeed, the vast majority of cases in this District have held not only that the Supreme Court's reservation does not preclude application of *Padilla* rule in the immigration context, but also that *Padilla* does apply so as to require that a habeas corpus petition must be filed in the district of the petitioner's immediate physical custodian.[9]  Because *Padilla* applies in this context, the general rules of venue set forth in *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973), do not apply.  As District Judge Daniels recently observed in granting a motion to transfer: "the *Padilla* court

---

[8] Transcript dated Sept. 7, 2018, *Gomez v. Decker*, No. 18 Civ. 4009 (filed as Dkt. 65) at 7:17-24.

[9] *E.g.*, *Lemus-Pineda v. Whittaker*, 354 F. Supp. 3d 473, 474-75 (S.D.N.Y. 2018) (Daniels, J.); *S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (Caproni, J.); *Almazo v. Decker*, No. 18 Civ. 9941, 2018 WL 5919523, at *1 (S.D.N.Y. Nov. 13, 2018) (Engelmayer, J.); *Cesar v. Shanahan*, No. 17 Civ. 7974, 2018 WL 1747989, at *1 (S.D.N.Y. Feb. 5, 2018) (Ramos, J.); *Lo v. Sessions*, No. 17 Civ. 6746, 2017 WL 8786850, at *1 (S.D.N.Y. Sept. 15, 2017) (Woods, J.); *Adikov v. Mechkowski*, No. 16 Civ. 3797, 2016 WL 3926469, at *1 (S.D.N.Y. July 18, 2016) (Oetken, J.); *Bacuku v. Shanahan*, No. 16 Civ. 305, 2016 WL 1162330, at *1 (S.D.N.Y. March 1, 2016) (Schofield, J.); *Rone v. Holder*, 309 F. Supp. 3d 154, 155 (S.D.N.Y. 2015) (Ramos, J.); *Guo v. Napolitano*, No. 09 Civ. 3023, 2009 WL 2840400, at *3-4 (S.D.N.Y. Sept. 2, 2009) (Gardephe, J.); *Drakoulis v. Ashcroft*, 356 F. Supp. 2d 367, 370-71 (S.D.N.Y. 2005) (Kaplan, J.); *Shehnaz v. Ashcroft*, No. 04 Civ. 2578, 2004 WL 2378371, at *3-4 (S.D.N.Y. Oct. 25, 2004) (Cote, J.).

distinguished *Braden* as a case involving a challenge to custody other than present physical confinement and noted that nothing in *Braden* supports departing from the immediate custodian rule in the traditional context of challenges to present physical confinement." *Lemus-Pineda*, 354 F. Supp. 3d at 474 (internal quotation marks omitted).

## II.    The Presence of Non-Core Claims Does Not Change the Analysis

Mr. Sow further argues that *Padilla* should not apply in his case because: 1) Mr. Sow's noncore claims predominate over his core claims; and 2) the Court can apply pendent jurisdiction over the core claims.    The most recent authority on this issue countenances otherwise.

Mr. Sow references two cases in this District where the court found a mixed petition containing core and non-core claims to be properly venued here.    *See Calderon v. Sessions*, 330 F. Supp. 3d 944, 952 (S.D.N.Y. 2018); *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 423 (S.D.N.Y. 2018).    In *Calderon*, the Court found the case properly venued based on a theory that although the petitioner's physical custodian was not located in New York, his "legal" custodian (an ICE official with authority to order petitioner's release) was present in the district.  330 F. Supp. 3d at 952-53.  Meanwhile, the Court in *Mahmood* invoked pendent jurisdiction over the core habeas claims as the basis for maintaining jurisdiction over the case before it.  312 F. Supp. 3d at 424.

Even more recent authority, however, has rejected these rationales as inconsistent with *Padilla*.  As Judge Caproni in this District explained:

> The Court finds neither of these approaches satisfactory.  By applying the legal control test to the petition as a whole, *Calderon* appears to have run afoul of *Padilla*'s first rule: that the immediate custodian rule must govern "core" claims challenging present physical detention.  *See Padilla*, 542 U.S. at 435, 124 S.Ct. 2711.  And by applying pendent venue to the petition's "core" claims, *Mahmood* appears to have run afoul of Padilla's second rule:

8

that "core" claims must be brought in the district that has territorial jurisdiction over the custodian of the petitioner's present physical detention. *See id.* at 443, 124 S.Ct. 2711.

When faced with a "mixed" petition, the approach most faithful to *Padilla* and this Circuit's case law is to apply the immediate custodian rule to the petitioner's "core" claims and the legal custodian rule to the petitioner's "non-core" claims. The petition must then be transferred to the district that has both (a) territorial jurisdiction over the immediate custodian and (b) venue and personal jurisdiction over the legal custodian. This approach respects both the governing precedent in this Circuit and the cardinal rules of *Padilla* (which, for all its limitations, remains the leading Supreme Court precedent on this issue).

*S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 409 (S.D.N.Y. 2018) (Caproni, J.); *see also*

*Sillah v. Barr*, No. 19 Civ. 1747, 2019 WL 1219438, at *2 (S.D.N.Y. March 14, 2019)

(same), *Anguisaca v. Decker*, No. 18 Civ. 7493, Dkt. 18 (S.D.N.Y. Nov. 30, 2018)

(Engelmayer, J.) (same).[10]

The reasoning in *S.N.C.* is sound, and this Court is constrained to adhere to the

*Padilla* principles, unless and until the Second Circuit or Supreme Court determines that

alternative rules apply to mixed petitions such as Mr. Sow's.

---

[10] The legal-custodian theory has been repeatedly rejected. *E.g., Ramirez Portillo v. Decker*, No. 19 Civ. 572, 2019 WL 1409450, at *2 (S.D.N.Y. March 28, 2019) (Castel, J.); *Wellington v. Barr*, No. 19 Civ. 1986, 2019 WL 1433294, at *1 (S.D.N.Y. March 27, 2019) (Ramos, J.); *Salcedo v. Decker*, No. 18 Civ. 8801, 2019 WL 339642, at *1-2 (S.D.N.Y. Jan. 28, 2019) (Abrams, J.); *Golding v. Sessions*, No. 18 Civ. 3036, 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018) (Sullivan, J.); *Cesar v. Shanahan*, No. 17 Civ. 7974, 2018 WL 1747989, at *1 (S.D.N.Y. Feb. 5, 2018) (Ramos, J.); *Alberto v. Decker*, 17 Civ. 2604, 2017 WL 6210785, at *2 (S.D.N.Y. Nov. 21, 2017) (Castel, J.); *Adikov v. Mechkowski*, No. 16 Civ. 3797, 2016 WL 3926469, at *1 (S.D.N.Y. July 18, 2016) (Oetken, J.); *Fortune v. Lynch*, No. 15 Civ. 8134, 2016 WL 1162332, at *2 (S.D.N.Y. March 22, 2016) (Failla, J.); *Guo v. Napolitano*, No. 09 Civ. 3023, 2009 WL 2840400, at *3-4 (S.D.N.Y. Sept. 2, 2009) (Gardephe, J.).

### III.    The "Exception" for ICE's Failure To Update Counsel Does Not Apply

Mr. Sow argues that because ICE officers withheld information regarding Mr. Sow's transfer from New York to an "unidentified out-of-state facility," this case should fall into the exception outlined by Justice Kennedy's concurrence in *Padilla*.    Mr. Sow, however, has not shown that, even if the exception were controlling law, it would apply to ICE's conduct in this case.

In concurring with the majority in *Padilla*, Justice Kennedy agreed that "[o]nly in an exceptional case may a court deviate from those basic rules to hear a habeas petition filed against some person other than the immediate custodian of the prisoner, or in some court other than the one in whose territory the custodian may be found." *Padilla*, 542 U.S. at 454.    In addition to the exceptions outlined by the majority (and not applicable here), Justice Kennedy stated that he "would acknowledge an exception if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention." *Id*.    As in *Padilla*, the exception contemplated by Justice Kennedy does not apply in Mr. Sow's case.

First, Mr. Sow has not offered any evidence showing that the Government purposefully made it difficult for his lawyer to know where the habeas petition should be filed by moving him "so a filing could not catch up to the prisoner." *Padilla*, 542 U.S. 454 (Kennedy, J., concurring).    Nor has Mr. Sow pointed to any evidence demonstrating that Officer Sayed (who was not Mr. Sow's deportation officer) purposefully withheld information of his impending transfer when speaking with Mr. Sow's counsel on

December 4, 2018. (*See* Bogaciu Aff. ¶ 8.)    Not surprisingly, Mr. Sow's counsel acknowledged at oral argument that they were not pressing the assertion that ICE had an improper "purpose."

Instead, Mr. Sow's counsel focused on the second prong of Justice Kennedy's suggested exception for when the Government is not forthcoming in identifying the detainee's place of detention.    Mr. Sow emphasizes that (a) pursuant to its own policy, ICE was required to notify a detained immigrant's attorney as soon as practicable on the day of transfer and no later than 24-hours after transfer occurs, and that (b) on December 4, 2018, ICE informed Mr. Sow's counsel that Mr. Sow was in New York and did not inform counsel that Mr. Sow would be or had been transferred to Louisiana.    But there is no allegation that the Government "refuse[d] to tell [Mr. Sow's] lawyer where he had been taken." *Padilla*, 542 U.S. 454 (Kennedy, J., concurring).    To the contrary, the Government affirmatively updated Mr. Sow's counsel on December 7.    As for counsel's discussion with Officer Sayed on December 4, 2018, there is no indication that Mr. Sow's counsel asked Officer Sayed to speak with Mr. Sow's assigned detention officer or that Officer Sayed had any knowledge that Mr. Sow was to be transferred to Louisiana later that day.

This Court agrees that *Padilla* should not be interpreted so as to condone or encourage misbehavior or deceptive conduct by the Government in transferring immigrant detainees.    But this is not such a case.[11]

---

[11] To the extent not discussed above, the Court has considered Mr. Sow's other arguments and found them to be without merit.

## IV.     Release

The determination of whether Mr. Sow should be released pending further proceedings should be determined by the Court with jurisdiction over his core claims. Accordingly, the Court declines to address this issue.

### Conclusion

For the reasons set forth above, the Government's motion to transfer is GRANTED as follows:  By May 15, 2019, Petitioner shall inform the Court whether he elects to either (a) amend his petition to omit the core claims (as predecessor counsel did) so that he can file his core claims in New Jersey, or (b) have the entire petition with both core and non-core claims transferred to New Jersey.[12]  In the absence of timely notification to the Court, the Court will transfer the petition as currently pleaded to New Jersey.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            May 8, 2019

Copies transmitted to all counsel of record.

---

[12] In its briefing and at argument, the Government agreed that Mr. Sow's petition, whether limited to core claims or including both core and non-core claims, properly could be filed in New Jersey, where Mr. Sow currently is detained.  (Respondents' Reply in Support of the Motion to Transfer, at 2.)

12